PATRICK CALLAHAN v. THE INHABITANTS OF THE TOWN-
SHIP OF MORRIS.

1. The township committee have no power to authorize an overseer of roads to expend money for their repair, so as to render the township liable to an action.
2. Roads must be opened or worked for cash or upon the credit of the overseer; or if the overseer is not furnished with money he may warn out the inhabitants to work without pay.
3. The township committee are authorized to apportion the money raised for road purposes among the several districts; but they ought not to make the apportionment, and newly assign to the overseers their respective divisions until twenty days after the town meeting; so that it may be known what taxpayers have given notice that they will work out their road tax.
4. The committee ought to keep a record of their proceedings, and make all their orders in writing.

This was a case, certified from the Circuit Court of the county of Morris, for an advisory opinion, whether the charge of Chief Justice Whelpley stated the law correctly. The facts of the case sufficiently appear in the charge and the opinion of the Supreme Court.

Argued at June term, 1862, before the CHIEF JUSTICE, and Justices HAINES, VAN DYKE, and ELMER.

For the plaintiff, *T. Little.*

For the defendant, *J. Vanatta.*

The charge of the Chief Justice was as follows:

This is a case involving questions of much public importance. The plaintiff's action is brought to recover of the township the sum of $102, which he alleges he has expended upon the highway in road district No. 47, over which he was elected overseer, in the spring of 1860, by the inhabitants at their annual town meeting. This sum he claims by reason of a contract, alleged to have been made with him by the town committee in the spring of that year, and after he was elected overseer. He alleges that the committee directed him to go on and work out the same taxes on the road, as had been been worked out on it the previous year. The common law casts upon the township the burthen of making and repairing its public highways, as it does upon the county that of making and repairing bridges. But the township is not liable civilly for a neglect of the duty to anybody sustaining especial injury thereby, nor is a county, in like case, for injury arising from non-repair of bridges.

The duties are owing to the public, not individuals, and their performance is enforced by indictment, not suit by individuals.

The town committees have no common law power to bind the townships. Whatever powers they possess are derived from statutes. This case, like the one just tried, shows the importance of protecting the people against their own servants, by confining them within the strict limits of the powers conferred by law.

The modes in which roads are to be made and repaired are very carefully defined by the act on that subject. The townships may do it either by hire or labor, and they may vote on this subject once in three years, and cannot change the mode adopted in the meantime.

When the roads are maintained by labor, no specific tax

is assessed for the purpose, and the town committee is to assign the inhabitants of the township to the districts in equitable proportions, having regard to the circumstances of the inhabitants and the quality of the highways; and the labor of the inhabitants is to be apportioned by the overseer in proportion to the other taxes.

The other mode is by hire. The townships are authorized by statute to raise money by tax for repairing roads, to be voted at their annual town meetings, *Nix. Dig.* 706, § 22;* and this section enjoins it on the township to be careful to have money in hand ready to advance, sufficient for the objects and purposes specified in the act concerning roads.

The 23d section of the act requires the overseers to account for the expenditure of the money they shall receive to the town committee or the town meeting, and to pay the overplus to their successors in office. If the township is fined on indictment for non-repair, the overseer shall refund the fine. This is to be done, of course, from the money advanced to him, and not properly expended; or if none was furnished, then for neglect to call out the inhabitants he is to pay the money.

The 42d section of the act requires the overseer, if the township neglects or refuses to raise and furnish to the overseer sufficient money, to maintain the highways in the mode prescribed for doing it by labor.

These sections and the whole act show clearly that the roads are to be worked on the cash, not the credit system, and give to the township officers no power to contract for the repair of the highways, on the credit of the township. If that were the case, there would be no limit to the amount of moneys the town committee might authorize expended on the highways.

If they may do it on credit, it is equivalent to permitting them to borrow money to an unlimited extent.

If a person elects to work out his tax, the overseer will have so much more money to turn over to his successor in office.

*Rev., p. 1003, § 39.

Callahan v. Township of Morris.

The act gives the overseer no action against the township for neglecting to raise and furnish the necessary money; in that case his duty is plain, to work the roads by labor in the mode prescribed and already stated.

Any contract which the committee may make with the overseer, to pay him a certain sum of money for his district, does not bind the township, and no action can be maintained on it against the township.

If the committee, out of money in hand, appropriate to an overseer a certain sum, and the treasurer refuses to pay it, the remedy against him or the committee to compel its payment is by *mandamus* to the treasurer or the committee; because that is their default, not that of the township. The act never intended the township should be held liable civilly for the default of the committee; if it were so, then every overseer who was dissatisfied with the action of the committee, might harass the township with suits, and expose them to the payment of unnecessary costs and expenses.

In this case the plaintiff has given no evidence to the jury, of a contract made by the committee with the plaintiff, if it had the right to make one to bind the township. The conversation between him and the chairman did not amount to a contract or appropriation. It was not the act of the committee. No vote was taken upon it. A resolution to that effect has not been shown by the minutes or by parol.

The act of the assessor in filling out his list of names with the road taxes did not bind the township.

Nor did the fact, that the taxes of residents in his district amounted to a certain sum, give him any right to sue the township for that sum, or any part of it. They belonged to the township, not to him.

The apportionment to the overseer the previous year did not affect the question, or give him a right to an equal sum for the next year.

Each committee acts for the current year as well as each overseer. A new appropriation is to be made every year.

The section on the subject of setting off road districts only

provides a mode of determining what road each overseer shall work, and defines the limits of his district. They are to remain until changed. It does not relate to the apportionment of the money to be expended on that district.

It is clear, from what I have said, and the provisions of the act, that the law contemplates no other modes of working the highways than by money furnished to the overseer, or by labor under the direction of the overseer, properly apportioned among the inhabitants. There is no intermediate mode of doing it on the credit of the township; all idea of that kind is carefully excluded by the particular provisions of the act.

That section which requires them to be worked on the labor plan, when no money is furnished, settles the question against the right to contract with the overseer.

If, however, the committee, in advance of the assessment and collection of the tax voted, apportion a particular sum to a given district, and the overseer chooses to waive his legal right to the payment of the money in advance before he begins work, and to advance the money, he may do so; and when the taxes are collected and received by the committee or their treasurer, he can call upon the committee to make payment of the appropriation, and if they refuse to do so, he may have his remedy by *mandamus* against the committee or its treasurer. They are the defaulters, and they must respond to the injured party.

If the township fail to furnish any money to the overseer, they cannot be sued for the neglect; he must proceed on the labor plan. Surely they cannot be in a worse position for the default of their agents than their own.

In no aspect of the case is the plaintiff entitled to recover, and your verdict must be for the defendants.

The opinion of the Supreme Court was delivered by

ELMER, J.   The inhabitants of the several townships in this state are corporate bodies and as such capable of suing and of being sued.   Formerly corporations could only be bound by a writing under their corporate seal; but in

modern times the officers and agents representing these bodies, and acting within the sphere of their duties, have power to bind them, and to impose on them contracts and obligations which may be enforced by actions at law, as in the case of individuals transacting similar business. But whether any particular officers of a corporation have this power, depends on the construction of the statutes prescribing their duties, and this is especially the case in regard to municipal corporations. It has been held that overseers of the poor may, in certain cases, enter into contracts for which the township is liable. *Saddle River* v. *Colfax*, 1 *Halst.* 115. And the express terms of the statute seem to render them liable to an action for the damages assessed upon the laying out of a highway. *Nix. Dig.* 712, § 61*

In the case of *Mendham* v. *Losey, Penn.* 347, decided in 1808, it was held, by this court, that an action could not be maintained against a township for money expended by an overseer of the roads, for their necessary repair. There was in that case, no allegation that the township committee had in any way authorized the expenditure; but the decision was made on the ground that the overseer was not bound, and therefore not authorized to do more than to expend such money, as he should be furnished with for that purpose. Stress was properly laid upon the provision, still forming a part of the road act, whereby the townships were enjoined to be careful to have money in hand, ready to advance, sufficient for the objects and purposes specified in the acts. At that time it was somewhat doubtful whether the overseer was not liable to punishment for not keeping the road in repair, even in a case where he had no money in hand; and no provision was made whereby he had authority, in those townships which had elected to maintain their highways by hire, to call out the inhabitants and require them to work, however great the emergency.

The acts concerning roads were revised and re-enacted in 1818, and this new act was evidently framed, not to alter the construction of the old act, adopted by the Supreme Court,

* *Rev.*, p. 999, § 15.

but in accordance therewith, and to remedy any inconvenience that might be occasioned thereby. The 36th section of this act, retained *verbatim* as the 42d section of the existing act provides, that if sufficient money is not furnished to the overseer, then it shall be, and is thereby made his duty to open, amend, and keep the highways in good order, in the same manner as is prescribed to the overseers of those townships which elect to maintain their highways by labor, that is, by warning and calling out the inhabitants to work on them. I am at a loss to imagine how the legislature could have more plainly indicated its intention to deny to the overseers of roads all power to incur expense, whereby the township should become a debtor, and liable to refund it. The plain and obvious purpose of the act was, to require all necessary expenditures on the highways to be defrayed from money kept in hand for that object, and in case the inhabitants neglect to furnish such money, to subject them to be warned out to work.

By the 12th section of the act incorporating townships, *Nix. Dig.* 835,* the township committee have authority, and it is made their duty, " to superintend the expenditure of any moneys raised by tax for the use of the township, or which may arise from the balance of the accounts of any of the township officers ;" and by the 39th section of the act concerning taxes, *Nix. Dig.* 799,† collectors and other township officers are directed to pay the moneys received, to the said committee. It thus becomes the duty of the committee to apportion the money raised for the highways among the several overseers, to be expended in their respective districts as the committee, or a majority thereof, deem expedient. As individual taxpayers have a right to work out their road tax, or a part of it, on the highways assigned to the overseer within whose limits they reside, provided they give written notice of their election to do so within twenty days after the order for raising the said money shall be passed, no proper apportionment can be made until the time for giving such notices has elapsed. Nor is there any authority vested in

---

*Rev.*, p. 1195, § 12.   †*Rev.*, p. 1146, § 39.

Callahan v. Township of Morris.

the committee, to divert the work of any taxpayer from the district in which he resides, and assign it to another. But money may often be properly apportioned before it is in fact collected; and although the overseer is not bound to incur the expense of opening or repairing a road by hire until he has the money in hand, yet, if he thinks proper to act upon the faith of such an appropriation, he may do so. This is often done in many parts of the state without dispute or difficulty; and with a reasonable disposition to do right, such a course is generally safe and expedient. There is, however, not only no express power given to the committee to authorize the expenditure of money not actually voted by the town meeting, or to involve the township in any liability for expenditures on the highways, but the clearest manifestation of an intention to prohibit any such course.

Assuming that the committee did in fact apportion to the plaintiff the amount of money he claims to have expended, I am clearly of opinion that he cannot enforce his claim by action against the township. In the absence of a right of action, the money, when actually in hand, may probably be obtained by a *mandamus*, but as to this it is not necessary now to express an opinion.

There was in this case no evidence offered from which the jury had a right to find that the committee did in fact ever make any apportionment of this money. The committee is not required to keep a record of their proceedings, although it is obvious they ought to do so; or if not, they should draw up their orders in writing, as they are expressly required to do when they assign to the overseers their divisions of the highways. There appears to have nothing more passed than loose conversations between the plaintiff and the chairman and other members of the committee, the plaintiff himself testifying, that he did not know of any resolution or vote being passed by the committee. To allow such a proceeding to have the force of a resolution binding on the committee or the township, would be contrary to every principle of evidence and exceedingly dangerous.

It was urged, for the plaintiff, that the construction of the acts above adopted, conflicts with some other parts of the road law which show a different meaning. It was said that the whole tenor of the different provisions of that law, and especially the prohibition to expend money on the roads, between the first of October and the first of April, show that the money ordered to be raised by the township meetings was intended to be expended during the current year. I am however unable to discover any such design. The positive injunction to have money in hand, implies that it was not expected to be expended until collected, which is seldom if ever effected until after the first of October. The act of 1857, 3 *Nix. Dig.* 754, § 98,* requires only that the overseer shall not require or employ any persons to work on the roads, between the first of October and first of April, except it may be necessary to make them passable when obstructed by snow or rain. The act authorizing the town meetings to vote and raise money for opening and repairing roads, contains no restriction as to the amount or the time of using it. Difficulties may sometimes arise in carrying out the provisions of the 25th section, which authorizes taxpayers, under certain circumstances, to work out their road tax; but these can be best obviated, by the committee waiting until the precise amount thus to be worked out is ascertained before they re-assign to the overseers their divisions, and apportion to them the money ordered to be raised, and would only be increased by giving to the overseer or the committee the power to bind the township for the payment of money expended on the roads.

If the intention was that the money ordered to be raised should be expended before it was collected, it would seem to follow that the overseer should be bound to expend his proportion, whether he was willing to do so or not. This, however, was not contended for, and is clearly not the design of the law. A resolution to work the roads by hire cannot be changed for three years; this delay and the injunction to keep money on hand, united with express authority to the

*Rev., p. 1012, § 94.*

overseer to warn out laborers when he is not furnished with money, show, I think, very satisfactorily, that it is the true intent and object of the statutes, that money sufficient to open and repair the roads should be voted and collected in advance, and kept always on hand, and that, if the inhabitants neglect to do this, they shall be subject to be warned out and do the work, as a part of the burthens imposed on them for the public good.

I am therefore of opinion that it should be certified to the Circuit Court—

First. That there was no evidence tending to prove the defendants liable to the plaintiff for the amount claimed, or any part thereof, which should have been submitted to the jury.

Second. That the charge of the judge was in all respects correct.

The CHIEF JUSTICE and HAINES, J., concurred.

VAN DYKE, J., (dissenting). The plaintiff in this case had been elected an overseer of the highways for district No. 47, in the township of Morris, for the year 1860. He met the township committee at their first meeting thereafter, and was directed by them, or some of them, to work out or expend on his district the same amount that had been expended by his predecessor the year before, which was $132. He worked out and expended accordingly on his district the sum of $102.42. He kept an account of this work and expense, and in October, of the same year, he rendered his account to the committee of the township. The committee did not at first, but afterwards objected to paying the bill, for the reason that a part of it was not due ; but proposed to pay a part of it, to which they did not object. The bill not being paid, the plaintiff brought this suit against the township, in its corporate capacity, to recover the claim.

After the evidence was closed, the Chief Justice charged the jury, not only that the present plaintiff could not recover, but, if I correctly understand it, that no action of the kind could be sustained under any circumstances.

Overseers of the highways are elected under the act incorporating the townships, and the legal voters of the townships are by that act authorized to vote at their town meetings, to raise such sum or sums of money, for the opening, making, working, and repairing of roads, and keeping them in repair, as they may think necessary; which money is to be raised by a tax assessed on the inhabitants of said townships.  The township committee are also elected under the provisions of that act, and this committee is not made up of mere machines, whose every possible motion is particularly presented, and outside of which they cannot go; but they are evidently intended to be elected at that time by the corporators, so to speak, as a kind of board of directors, to manage especially the financial affairs of the corporation.  They are authorized to act through a quorum, like most, if not all other boards of directors.  Their election is provided for in a clause of the section, apart from those which provide for the election of other officers; and the duty is imposed upon this committee, not only of examining, inspecting, and reporting to the town meetings the accounts and vouchers of the township officers, but also *to superintend the expenditure of any money raised by tax for the use of the township.*  It seems to me, therefore, that this township committee are, to some extent, the legally authorized agents of the township; and when they act within, and not outside of their powers and duties, their acts will bind the township, very much the same as the acts of other agents, duly authorized, will bind their principals.

One of the duties imposed on the township committee is to divide the township into districts, and to assign to each overseer of the highways his particular district, for the purpose of opening, clearing out, working, amending, and repairing the highways therein, and these assignments the respective overseers are bound to observe and conform to.

It is then made the duty of the several overseers to hire laborers, horses, plows, wagons, and other things necessary

to open, clear out, make, work, amend, and repair and keep in good order the highways within their respective districts.

It is then declared, in the next section, that the money necessary to defray these expenses, shall be raised in the manner prescribed in the act incorporating the townships before referred to, that is by a tax, after a vote to that effect by the inhabitants.

It appears to me, then, that when the townships have duly elected their township committees and their overseers of the highways, and all are duly qualified; and when they have also, by vote, determined to raise by tax sufficient money to make and repair the highways of the township, and when the committee has duly assigned to each overseer his particular district, and informed him of the particular amount of money that had been or would be appropriated to his district; (for it is unquestionably the right not only, but the duty of the committee in discharging their obligations, to superintend the expenditure of money, to apportion the amount raised or ordered to be raised for the purpose among the different road districts of the township,) and when the overseer has gone to work, as directed by the statute, and hired the men and teams, and wagons and carts, and made, opened, amended and repaired the roads of his district, and incurred all the expense of it himself, not exceeding the sum apportioned to his district, and has duly accounted for such work and expenditure of money to the committee; and when all other duties presented by law, if any, have been performed, and the money to defray such expenses has not within a proper time been paid or refunded to such overseer, it appears to me, I say, after all these things have been done, and the money has not been paid to him, that the township itself is liable to him for the amount, as to one of its agents and servants who has performed labor and service for it, and expended money in its behalf pursuant to its own action and request, and also in pursuance of the law of the land; for every step taken by any one in the premises is just such step as the law enjoins or recognizes.

It was remarked, in the charge, that the whole act shows clearly, that the roads are to be worked on the cash, and not on the credit system. So far as this part of the act is concerned, it seems to me directly otherwise; and from the construction that has always been given to it, the practice has been, nearly, if not quite always, to the contrary. From the nature of the thing, the work is done before the money is raised. So far as my observation extends, the committee and overseers of the highways are always elected at the same town meeting when the money is ordered to be raised. The money is not assessed and collected till late in the season, whereas the work is generally done on the roads in the early part of it, and upon the credit of the money voted to be raised at the previous town meeting, when the overseers were elected.

Of course a township would never raise money by tax in one year to pay for working the roads the next year; for the voters at the next year's town meeting might vote not to work the roads by hire, but by labor: and if the money for that purpose should be borrowed from some other source, with a view to have it ready to advance to the overseer to pay for the work before it is done, it would seem to be going somewhat on the credit system; and then, too, the inhabitants might decide at the next town meeting, that they did not want it for that purpose, but would work the road by labor.

A township newly organized, which elected its officers at their first town meeting in the spring, and at the same time voted to raise the money necessary to work the roads, could not possibly raise the money by tax to do so before the work should be done, unless it should be delayed until December.

All of the sections of the act touching this subject, up to the 37th, go on the presumption that the roads are to be worked by hire, and all the regulations and provisions of the act, thus far, are based on this assumption; but by the 37th section, the inhabitants of the township are authorized to determine, by vote at their annual town meeting, whether

they will work their roads by hire or by labor. If they determine to do it by hire, then the mode of doing it is already provided for. If they decide to do it by labor, then another mode of proceeding is to be adopted. This latter course the townships *may* take if they so determine; but if they do not in fact, determine to pursue that course, the conclusion of law is that they determine to work by hire, unless they refuse or omit to order the raising of the money for that purpose.

If the township elects and determines to work by hire, but fails to raise, or order raised, the money with which to do it, in that case the overseers are directed to proceed as though the determination had been to work by labor, and to warn and call out the inhabitants for that purpose. But this can only occur, when the township has determined to work by hire, but has wholly omitted to make any provision by vote, for the raising of any money for that purpose; for if the township votes and determines to work the roads by hire, and at the same meeting votes and determines to raise by tax the money necessary to do it with, the overseer has then no right to call out the inhabitants, and make them liable to the penalties of disobedience. He is then authorized and required to consider that the roads are to be worked by hire; and if his district be properly assigned to him, and if he be apprized by the committee of the amount of money that will be or has been apportioned to his district, out of the money so ordered to be raised by the township, he has a right to go on and expend that amount in repairing, &c., the roads of his district; and if the amount, not being above the proper apportionment, be afterwards improperly withheld from him, he can, I think, maintain his action for it against the township.

It is said, however, that the committee have no right to make such a contract with the overseer. They do not make any contract. It is not necessary that they should do so. The right of action does not arise out of a contract but out of the law, when all of its directions have been complied with. It is the duty of the committee to assign the districts,

and, I think, to apportion the money properly to or among them. It is not necessary that they should go any further, unless it be simply to apprize the overseers of these facts. If the township did not vote to raise the money for this purpose, no contract by the committee in the case could make it liable. This the overseer is bound to know, for he knows, or is bound to know, that if the township does not make provision for the raising of the money, he cannot undertake to work the roads by hire, for in that case his duty is to take the other course, and call out the inhabitants.

It is also said that the proper remedy in this case, if one exists, is by *mandamus* against the committee or its treasurer for not paying over the money. I am aware that this *mandamus* proceeding has become quite a favorite one of late. I recollect that it was used in one case as a substitute for the action of ejectment, and in these days of non-imprisonment and family exemptions, and debts and difficulties in collecting, I should not wonder if it should be generally resorted to for the collection of bad debts. To collect a debt would certainly be its character, if used in a case like this. Be that as it may, I certainly think it should not be resorted to in cases like the present; for, in the first place, here is a dispute, as there may be in every such case, as to what amount is actually due, which is not properly the office of a *mandamus* to determine. And then it may be, that an overseer may be deprived of his money, without any fault on the part of the committee or their treasurer. The committee do not raise the money when ordered to be raised by the township; this is done by other agents of the township, over whom the committee have no control.

If the proceeding by *mandamus might* lie in such case, it is not a proceeding of right but of *discretion;* and while a party might reasonably calculate on what the law would do for him, he might be quite at a loss to tell where the discretion of a court might land him.

Again, while a *mandamus* might have the effect to punish some delinquent official, it might be wholly powerless in get-

ting for the plaintiff his money.   He should not therefore be shut up to a remedy like this.

If it be admitted that a *mandamus* might be used in such cases against the agents, I do not see how it can, nor why it should, deprive the party from his usual remedy against the principals for work and labor which he has performed, and money which he has paid out for them, according to their different votes, and in strict pursuance of the law, as one of their appointed and lawful servants.

The evidence in the case before us, is not as full and clear as it might have been perhaps; but I think that certain facts may be considered as either admitted, or so far proved as that the jury should have passed upon them.

1. That the township committee as well as the plaintiff, had been duly elected at the town meeting next preceding the doing of the work, and had entered on the duties of their respective offices, and that at the same town meeting, the voters duly voted to raise money to work and repair the roads.

2. That the plaintiff's district had been duly assigned to him by the committee.

3. That the committee had determined that a portion of the money so ordered to be raised was to be appropriated to the plaintiff's district, and so informed him.

4. That he accordingly went to work, and expended on the roads of his district the amount named, or some part of it.

These facts show that the plaintiff was entitled to recover something, and the jury should have been permitted to ascertain what it was.

Our roads are badly enough worked now; but if every overseer is to understand, that unless he gets his pay in advance he can never recover it, except from some delinquent agent, by a proceeding which he has never before heard of, we shall be far worse off than we are now.

I think, therefore, that the Circuit Court of the county of Morris should be advised to set this verdict aside, and grant a new trial.

The charge of the CHIEF JUSTICE sustained.